IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


BENNY MANZANARES,

               Petitioner,

v.                                             CIV 05-1105 JH/KBM

JOE ROMERO, Warden, et al.,

               Respondents.


## PARTIAL PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Benny Manzanares' timely petition for a writ of habeas corpus under 28 U.S.C. § 2254, *Doc. 1,* motion for appointment of counsel, *Doc. 3,* and "motion" and "amended motion" to "vacate illegal sentence," *Docs. 14, 15.* The matter is also before the Court on Respondents' Answer and motion to dismiss. *See Docs. 10-12.* I recommend that Respondents' motion to dismiss be denied in part, and that the record be supplemented and the pertinent issues rebriefed. *See Rules 5(c), 7(a)-(c),* Rules Governing Section 2254 Cases In The United States District Courts.

## I.  Factual & Procedural  Background

      Manzanares has at least five convictions for driving while intoxicated or "DUI." Three of the convictions are for conduct that occurred in New Mexico between 1990 and 1993. One is for conduct that occurred in New Mexico in 1998. The fifth conviction is for conduct that occurred in Colorado in 2001. *See, e.g., Doc. 12* (hereinafter "*Answer*"), Exh. A. All of these offenses and convictions occurred prior to the 2003 amendments to New Mexico's DUI statute. Among other

things, effective March 28, 2003, House Bill 117 made the penalties for someone with prior convictions "under" or "pursuant to this section" more severe.  *See, e.g., State v. Smith,* 136 N.M. 372, ___, 98 P.3d 1022, 1024, 1026-27 & n.2 (N.M. 2004).

Over a year after these amendments went into effect, Petitioner was accused in New Mexico of driving under the influence and with a suspended license on or about May 23, 2004. *See Answer,* Exh. A.  According to letters he submitted with his state habeas petition, Manzanares became upset with his court-appointed attorney for allegedly not returning his telephone calls and not requesting a bond reduction or furlough.  *See id.,* Exh. C (page 38 if sequentially-numbered, letter from Petitioner to attorney dated September 8, 2004).  A month after Manzanares wrote that letter, he signed a plea agreement.

The written agreement provided that the State "will prove DUI convictions at sentencing" and that the possible penalties ranged from eighteen months to three years for DUI, depending on how many of those other convictions it proved.  Although the plea agreement further provided that "defendant waives his right to appeal the conviction that results from the entry of this plea agreement," it specifically did not include waiver of the right to appeal the sentence and/or the use of prior convictions to enhance the sentence on the underlying charge.  Nor did it specifically waive the right to pursue postconviction relief.  *See id.,* Exh. B. at ¶ 5.

The agreement is dated November 8, 2004, the same date the plea was accepted by state court judge Thomas J. Hynes.  Also on that date, counsel signed the agreement warranting that she had discussed the case with defendant and advised him of his "constitutional rights and possible defenses," and a "sentencing" hearing was held. *See id.,* Exhs A-B.  I only have Judge

Hynes written findings that the plea was voluntary and accepted by him.[1]  But these findings do not mention whether Judge Hynes issued a decision concerning the appropriate sentence at November 8th hearing, nor what the parties contentions were in that regard.  *But see Answer, Exh. C* (page 2 if sequentially-numbered) (Petitioner indicates that Judge Hynes rejected his argument that the Colorado misdemeanor conviction could not be counted).

Just the day after he entered his plea, Petitioner wrote his attorney a letter asking her to move to withdraw his plea.  He took the position that state law does not permit use of any conviction older than ten years to enhance a sentence, and that there was no proof of the Colorado conviction.[2]  In a letter to the state judge the following day, November 10, 2004, he elaborated, saying that he had asked his attorney for months to see "copies of everything [the prosecutor] had on me" and that there was no evidence of the Colorado DUI.  Manzanares asked the judge to "please recon[s]ider my guilty plea to not guilty until we can get to the bottom of this case," and further asked for a new attorney.  *See id.,* Exh. C (pages 40-41 if sequentially-numbered).

---

[1]  The record before me however, does not contain a transcript of those proceedings, nor does Respondents' Answer indicate the status of any such transcripts.  *See Rule 5(c)* Rules Governing Section 2254 Cases In The United States District Courts ("The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed.").

[2]  In pertinent part, the letter provides in full:

> I'm writing you to with draw my guilty plea on 11-08-04 from guilty to not guilty due to I feel you couldn't prove to me the DUI in Colorado in 2002 and the state never had the burden of proof to convict me of my 6th DUI but only my 5th.  Also by law there[']s a 10 yr limit on all cases it doesn't exclude DUI's nor does the State Supreme Court allow anything over 10 yrs. to be used in any case.

Answer, Exh. C (page 39 if sequentially-numbered, letter from Petitioner to attorney dated 11/9/04).

Two days later, Petitioner again wrote his attorney.  This time Manzanares stated that he wanted to appeal because the Colorado conviction could not be counted to enhance the penalties. The letter states in pertinent part:

> I want to appeal my plea that was made on 11-08-04 to the Honorable Judge Thomas Hynes.  You were not even ready and neither was I because you never had none of the copies the D.A. had which I asked for since September. . . .  You told me over and over and over and over time and time again that you would send them to me.  By law I should have had them but you didn't do your job in representing me like you should have.  ***It is a shame I let you talk me into signing that plea when I knew we should have taken it to trial instead.***  All you kept telling me is we weren't going to win and the sooner I went to D.O.C. the sooner I would be with my family.  ***You should have known that you cannot use out of state convictions to enhance penalty therefore only those valid prior D.W.I. convictions obtained in New Mexico Courts may be considered for purposes of criminal enhancement penalties. State vs. Nelson*** [121 N.M. 301, 910 P.2d 935 (Ct. App. 1995), *cert. denied,* 121 N.M. 119, 908 P.2d 1387 (N.M. 1996).] ***Therefore, I want my appeal papers sent to me as soon as possible.***  Today is Friday the 12th of Nov. 2004.  I want them on Monday 15th without excuses.

*Id.* (pages 36-37 if sequentially-numbered, letter from Petitioner to attorney dated November 12, 2004) (punctuation and spelling corrected and original emphasis deleted and additional emphasis added).

All of Petitioner's letters are dated at least a month before Judge Hynes entered the judgment and sentence, yet nothing in the record indicates whether the attorney or the judge received and/or responded to any of them.  Judge Hynes counted all of the above prior convictions, Manzanares was sentenced as a sixth-time offender to two and one-half years incarceration for DUI and an additional 364 days for driving with the suspended license.  *See id.,* Exh. A.

4

Petitioner asserts that he "repeatedly asked" his attorney to file an appeal and that she "refused."  The record does not reflect any activity in the case until nine months after judgment was entered, when Manzanares filed a state habeas petition *pro se.  See id.,* Exh. C (pages 2, 4, 5, if sequentially-numbered).  In that petition, he sought "immediate discharge of confinement and to be compensated for all illegal time spent incarcerated."  As grounds for relief, Manzanares again asserted that it was "illegal" to use the Colorado conviction under *Nelson* to enhance his sentence, and that his attorney was ineffective for failing to file his appeal.  He attached numerous highlighted and interlineated copies of either the *Nelson* opinion itself or documents that discuss its holding for Judge Hyne's review.  *See, e.g., id.* (pages 2, 3, 8-11, 16-33, if sequentially-numbered).  In what appears to be copies from some other inmate's *pro se* pleadings, the attachments to the state petition also seemed to again raise the argument that prior convictions older than ten years cannot be counted in the DUI context.  *See, e.g., id.* (pages 12, 44-50). Judge Hynes summarily denied the petition the day after it was filed.  *See id.,* Exh. D.

In his petition for certiorari to the New Mexico Supreme Court, Manzanares argued that the "misdemeanor" Colorado conviction could not be used under *Nelson,* that his attorney failed to file an appeal as he requested, and that the New Mexico DUI statute was an impermissible *ex post facto* law.  *See, e.g, id.,* Exh. E at 1-3.  After certiorari was denied, Petitioner filed a motion to amend his judgement and sentence with the trial court, raising the *ex post facto* argument.  *See id.,* Exhs. F-G.  After that was summarily denied, Manzanares filed a motion for "clarification" of Judge Hynes' reasoning, that apparently was never ruled upon.  He also filed his federal petition.  *See id.,* Exhs. H-I; *Doc. 1.*

## II.  Analysis

In his first claim, Petitioner asserts that his attorney was ineffective for failing to investigate "the *ex post facto* laws" and thereby "allowed" three of his pre-1994 New Mexico prior convictions and the "misdemeanor" Colorado conviction to be used to enhance his sentence. *Doc. 1* at 6.   In his third claim, he maintains that his sentence was "illegal" for these reasons.  *Id.* at 9.   In his second claim, Manzanares maintains that his attorney deprived him of his right to appeal the "illegal" use of those prior convictions.  *See id.* at 7-8.[3]

Respondents do not address all of Petitioner's claims, nor do they discuss all of the issues raised in the claims that they chose to address.  Moreover, the arguments that Respondents do make in support of dismissal are somewhat conclusory.  *See Doc. 11.*

### A.  *"Lefkowitz Bar" Not Applicable*

Respondents first assert that a voluntary and intelligent guilty plea bars Petitioner from raising any constitutional claim based on ineffective assistance of counsel that does not implicate the voluntariness of the plea.  In support, they cite *Johnson v. Atherton,* 296 F.3d 991, 993 (10th Cir. 2002).

In *Johnson,* the state court refused to consider a claim that counsel was ineffective in advising his client not to accept the prosecution's first plea offer bargain, which would have capped the maximum sentence at eight years less than what the client ultimately received when he

---

[3]  Petitioner's other pleadings entitled as a "motion to vacate illegal sentence" do not add additional claims but only clarify his existing ones.  *See Docs.* 13-15.  As such, they should not be considered as separate motions.  *See, e.g., Sanders v. Yeager,* 57 Fed. Appx. 381, 382 (10th Cir. 2003) ("the caption on a pleading does not constrain the court's treatment of a pleading") (citing *N. Alamo Water Supply Corp. v. City of San Juan, Tex.,* 90 F.3d 910, 918 (5th Cir. 1996) and *Hamlin v. Warren,* 664 F.2d 29, 30 (4th Cir. 1981)).

later pled guilty pursuant to a second and less favorable plea offer.  The state court held that the

entry of the guilty plea was voluntary, and whatever happened before that guilty plea was

irrelevant.  *See Johnson,* 296 F.3d at 992.  In deciding whether that determination was contrary to

or an unreasonable application of Supreme Court precedent, the Tenth Circuit noted:

> The Supreme Court has determined that "a guilty plea, intelligently
> and voluntarily made, bars the later assertion of constitutional
> challenges to the pretrial proceedings."  *Lefkowitz v. Newsome,* 420
> U.S. 283, 288 (1975).  This bar has been applied to claims of
> ineffective assistance of counsel not implicating the voluntariness of
> the plea.  *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983)
> ("Smith's guilty plea was voluntarily and knowingly made, [thus] he
> cannot now attack the ineffectiveness of his counsel in any respects
> other than as the alleged ineffectiveness bears upon counsel's faulty
> advice that coerces a guilty plea.").  ***Of course, when the alleged***
> ***ineffective assistance of counsel claim does implicate the***
> ***voluntariness of the plea entered into, there is a legitimate claim.***
> *See Hill v. Lockhart,* 474 U.S. 52, 56-57 (1985).

*Id.* (emphasis added).

If Respondents maintain that the Tenth Circuit would find Manzanares' claims barred by

or waived under *Lefkowitz,* I believe they read *Johnson* too broadly.  The *Johnson* court

specifically stated,

> [w]e do ***not*** decide whether the *Lefkowitz* bar applies to claims
> involving ineffective assistance of counsel preceding a guilty plea.
> We need only determine whether the state court's adjudication of
> this claim was objectively unreasonable.

*Johnson,* 296 F.3d at 993 (emphasis added).  Moreover, unlike *Johnson,* the New Mexico state

court did not rely on the *Lefkowitz* rationale or discuss its merits as a basis for not considering the

ineffective assistance of counsel claims.  Instead, here the state court decided all of the claims on

the merits, albeit summarily.[4]

Furthermore, what the *Lefkowitz* Court actually stated was its "***general*** rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings," such as suppression proceedings. *Lefkowitz,* 420 U.S. at 288. The *Lefkowitz* case happened to fall within one of the exceptions the Supreme Court recognized to the general rule, so the federal habeas issues were cognizable.

As the Tenth Circuit noted above in *Johnson,* yet another acknowledged exception to the general rule is the exception announced in *Tollett v. Henderson,* 411 U.S. 258 (1973) – a defendant can "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set for the in *McMann* [*v. Richardson,* 397 U.S. 759 (1970)]." *Lefkowitz* at 295 (Justices White, Rehnquist and Chief Justice dissent) (quoting *Tollett,* 411 U.S. at 267)). The *McMann* decision introduced the familiar two-part *Strickland* test. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Hill,* 474 U.S. at 57-58; *McMann,* 397 U.S. at 770-71.

It is well-settled that attorney ineffectiveness in advising a client to accept a plea

---

[4] Because Manzanares filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case, *e.g., Michael Williams v. Taylor,* 529 U.S.420, 429 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997). So long as the state court does not dismiss a claim on procedural grounds, this Court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision." *See Cook v. McKune,* 323 F.3d 825, 831 (10th Cir. 2003); *see also in Chadwick v. Janecka,* 312 F.3d 597, 606 (3rd Cir. 2002) (discussing that in *Weeks v. Angelone,* 528 U.S. 225 (2000), Supreme Court applied AEDPA standards of review to claim state court dismissed summarily; Fourth Circuit had specifically held that AEDPA applies to summary dispositions), *cert. denied,* 538 U.S. 1000 (2003); *compare Morris v. Burnett,* 319 F.3d 1254, 1267 (10th Cir.) (if the "state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court" and therefore do not apply the AEDPA standards of review), *cert. denied,* 540 U.S. 909 (2003).

agreement can render the plea involuntary.  "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill,* 474 U.S. at 56; *see also e.g, Fields v. Gibson,* 277 F.3d 1203, 1215-1216 (10th Cir.); *cert. denied sub nom., Fields v. Mullin,* 537 U.S. 1023 (2002).

Manzanares contests whether the State could enhance the penalties for his most recent conviction based on the prior convictions.  His first ineffectiveness claim challenges his attorney's ***advice*** to enter a plea that provided for those enhancements, without investigating whether it was proper to count the prior convictions.  As such, the claim is not "barred" or "waived" as Respondents suggest.

### B.  Ineffective Assistance Of Counsel During Plea Proceedings

Erroneous sentencing predictions do not constitute deficient performance.  *E.g., Lasiter v. Thomas,* 89 F.3d 699, 703 (10th Cir.) (citing *United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.), *cert. denied,* 510 U.S. 1184 (1994)), *cert. denied,* 519 U.S. 998 (1996).  However, "[a]n attorney's demonstrated ignorance of law directly relevant to a decision will eliminate *Strickland*'s presumption that the decision was objectively reasonable because it might have been made for strategic purposes" and "[i]n many cases, a lawyer's unawareness of relevant law will also result in a finding that counsel performed in an objectively deficient manner."  *Bullock v. Carver,* 297 F.3d 1036, 1049-50 (10th Cir.) (and decisions cited therein where alleged ineffectiveness occurred in sentencing context), *cert. denied,* 537 U.S. 1093 (2002).

Respondents argue that there is no *ex post facto* problem with the use of the prior convictions, and that counsel had no "viable challenge to the prior convictions admitted in the plea

agreement and relied upon in sentencing." *Doc. 11* at 4-5.  That may be true insofar as the *ex post facto* argument is concerned.  *See Smith,* 136 N.M. at  ___, 98 P.3d at 1029-30, n.2; *State v. Hall,* 119 N.M. 707, ___, 985 P.2d 229, 231 (Ct. App. 1995).  However, Respondents neglect to address the aspect of this claim concerning the Colorado conviction and the *Nelson* case.

Both in the state proceedings and here, Petitioner accurately characterizes the *Nelson* holding.  In *Nelson*, the New Mexico Court of Appeals interpreted an earlier version of the New Mexico DUI statute, N.M. Stat. Ann. § 66-8-102, that contained increasing penalties for serial convictions "under this section."  The court observed that "[i]t would have been a simple matter for the legislature to change the language . . . from 'under this section' to 'under any state law, federal law, or municipal ordinance' when it amended the statute . . . but it did not."  *Nelson,* 121 N.M. at ___, 910 P.2d at 939.  Consequently, the *Nelson* court held that "'under this section' does not include within its purview out-of-state convictions [and] only those valid prior DWI convictions obtained in New Mexico courts may be considered for purposes of criminal enhancement penalties."  *Id.* at ___, 910 P.2d at 940.

At some later point, the legislature did modify the "under this section" language of §66-8-102 to read "pursuant to this section."  But it seems to me that the distinction is one without a difference in meaning.  *See Smith,* 136 N.M. at  ___, 98 P.3d at 1026-27, n.2.  Thus, the *Nelson* holding and its logic appears equally applicable to the statute after its 2003 amendments.  And if the Colorado conviction could not be counted, Petitioner's potential sentence would have been reduced by six months.  "[A]ny amount of [additional] actual jail time has Sixth Amendment significance."  *Glover v. United States,* 531 U.S. 198, 203 (2001) (increase of between 6 and 21 months).

As to prejudice, Manzanares asserts that if his attorney had advised him there were grounds to challenge the prior convictions the prosecutor wanted to use to increase his sentence, he would not have entered into the guilty plea. *See Doc. 14* at 2 ("Petitioner would never have signed a plea"); *Answer,* Exh. C (page 36 if sequentially-numbered; "It is a shame I let you talk me into signing that plea when I knew we should have taken it to trial instead. All you kept telling me is we weren't going to win and the sooner I went to D.O.C. the sooner I would be with my family."). Particularly in light of Respondents' failure to address the *Nelson* issue, those averments are sufficient at this time to avoid dismissal on the prejudice prong of the *Strickland* test. *E.g., Hill,* 474 U.S. at 59 ("in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

Therefore, I recommend that Respondents' motion to dismiss this claim be denied without prejudice, and that the matter be rebriefed following expansion of the record.

## C. Ineffective Assistance Of Counsel For Failing To File An Appeal

Respondents do not distinguish between ineffectiveness at the trial level and ineffectiveness for failure to file an appeal. The standards, as well as the potential habeas relief for the two, however, are entirely different. *Strickland* governs the alleged ineffectiveness during the plea proceedings, and the general remedy for a violation, if any, would be to tailor the remedy and return Manzanares to position he would have been in had the ineffectiveness not occurred.[5] In

---

[5] For cases discussing the proper remedy for a Sixth Amendment ineffectiveness violation in the plea context, see, for example, *Riggs v. Fairman,* 399 F.3d 1179, 1184-85 (9th Cir.), *rehearing en banc granted,* 430 F.3d 1222 (2005); *Nunes v. Mueller,* 350 F.3d 1045, 1056-58 (9th Cir. 2003), *cert. denied,* 543 U.S. 1038 (2004); *United States v. White,* 371 F. Supp. 2d 378, 384-86 (W.D.N.Y. 2005); *Turner v. Tennessee,* 726 F. Supp. 1113, 1117-18 (M.D. Tenn. 1989).

contrast, the Supreme Court's decision in *Flores-Ortega* governs claims of alleged ineffectiveness for failure to file an appeal, and the general remedy for a violation is to permit defendant to appeal. *See Roe v. Flores-Ortega,* 528 U.S. 470 (2000); *United States v. Garrett,* 402 F.3d 1262, 1264-1265 (10th Cir. 2005); *United States v. Snitz,* 342 F.3d 1154, 1155-57 (10th Cir. 2003). Since Respondents do not cite or brief *Flores-Ortega,* I must assume that they did not consider that decision when determining what information to submit with their Answer. Thus, further supplementation and briefing on this claim is necessary as well.

### D.  Evidentiary Hearing And Motion For Appointment Of Counsel

There is no constitutional right to counsel in habeas proceedings and, ordinarily, there is no reason to appoint counsel unless the case has reached the stage of the proceedings where an evidentiary hearing is required. *See e.g., Swazo v. Wyoming Dept. of Corrections,* 23 F.3d 332 (10th Cir. 1994). Because supplementation and further briefing is necessary, this case has not yet reached the stage where I must determine whether to hold an evidentiary hearing.[6] Therefore, I recommend denial of Petitioner's motion for appointment of counsel at this time without prejudice.

Wherefore,

---

[6] *See Rule 8(a),(c),* Rules Governing Section 2254 Cases In The United States District Courts ("If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted. . . . If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."); *see also id.* (Advisory Committee Notes from 2004 Amendments ("Rule 8(a) is not intended to supersede the restrictions on evidentiary hearings contained in 28 U.S.C. § 2254(e)(2)."); *United States v. Lewis,* 21 Fed. Appx. 843, 844-45 & nn. 1-2 (10th Cir. 2001) (rules numbered 8(c) governing 2254 and 2255 habeas cases are "identical" and "a defendant who satisfies *in forma pauperis* requirements . . . necessarily meets 3006A's requirements.").

**IT IS HEREBY RECOMMENDED AS FOLLOWS:**

1. Petitioner's pleadings entitled "motion to vacate" *(Docs. 14, 15)* be "denied without prejudice" for coding purposes.  They will not be considered as separate "motions" but will be considered as supplements to the original petition;

2. Respondents' motion to dismiss *(Doc. 10),* be denied at this time without prejudice;

3. Petitioner's motion for appointment of counsel *(Doc. 3)* be denied at this time without prejudice; and

4. In the event Judge Herrera adopts these recommendations, she set a schedule for

   (A) Respondents to supplement the record with:  (1) the "Record Proper," which they construe as only encompassing the written pleadings filed with the state courts; (2) transcripts or the tapes of all of the hearings held in this matter; (3) any documents or other evidence or materials submitted to the state courts at any time during the proceedings; and (4) any other materials Respondents wish the Court to consider under the expanded record, *See Rules 5(c), 7(a)-(c),* Rules Governing Section 2254 Cases In The United States District Courts; and

   (B) the parties to rebrief the claims.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

13